Good morning everyone. Our first case this morning is Lifestyle Enterprise v. United States. Mr. Belayne. Good morning, Your Honor. Thomas Belayne on behalf of plaintiff's appellant Iwa Timber. May it please the court. Iwa's appeal concerns the trade court's refusal to adhere to its standard of review when it issued a directed verdict requiring Commerce to use one surrogate value data source over another surrogate value data source, which Commerce had found previously to be unreliable for calculating Iwa's anti-dumping duty margin in their administrative review of wooden bedroom furniture from China. Before you get too much further, what about the standing issue? Yes, Your Honor. I imagine that was going to be your first question. Your Honor, we were somewhat surprised that this motion came in at the very last day of briefing in this case when Iwa was a party to this proceeding from the very beginning. Iwa filed its own action challenging Commerce's third administrative review determination. Iwa was a consolidated plaintiff below and Iwa participated below before the trade court and also during the remand redeterminations to Commerce. But Iwa did not move to intervene in the appeal in which the issue of weight versus volume was contested, correct? Well, Your Honor, we submit that intervention would have been superfluous under the fact that this case was consolidated for all purposes below, meaning that the court brought together the several appeals which were filed, considered all the issues together, issued one consolidated judgment, and then that permitted a party plaintiff, Iwa in this case, to appeal their front. And in fact, there are no cases on point that deal with this specific issue, Your Honor, but there is a case by this court's sister circuit in the Seventh Circuit where Judge Easterbrook said where the issues are so similar, where the facts are so similar, and where the appeal arises from the same determination, consolidation may merge the appeals all into one for the purposes of proceeding on appellate review. And, Your Honor, this is important because all of the issues were briefed below. It is not like a collateral attack where a court would not have had the opportunity to deal with the issues during the course of the consolidated appeal. The plaintiff or the cross-appellant here cites here the Johnson case, and in that case, there were two different cases on two different tracks, and that's a case where the Supreme Court had said that a collateral attack would not be appropriate. Here, the facts just don't line up with Johnson. In fact, they're more like the sandwiches case that we cite through page 9 of our reply to the motion to dismiss. Was there a point in the CIT when you were the only party making the argument about the weight and volume, or were you making that argument at all times only with the Commerce Department sitting next to you? Sure, Judge Toronto. There were several parties who were appealing the wood-based issue because of the outsized impact it had on the margin. As you know from reading the record, the anti-dumping duty margin went from 20% to 41% based solely on the wood value issue. And the other parties who were separate rate parties, their rates would be impacted by that determination. So all the parties were very concerned about this issue because of the outsized impact on the margin that it had. There was a point, however, when Yee Wah was the only party making an argument about this, and this has to do with the second part of our claim that the trial court exceeded its standard of review below, and that is the trial court found that there were only two surrogate value data sources for valuing wood, and that was an error. On this record, there were actually four, and Yee Wah had pointed the trade court and the Department of Commerce to those other two data sources when the trade court said… Is that point part of the appeal? I'm not quite sure what the correct language is here. The standing motion has something to do with your not having become a formal party in one case rather than the other. Is the case that you were not a formal party in the one in which the issue, this backup issue that came up, I guess, after the second remand determination arose, or was that in the one that you were a party in? Well, Judge Charles, this is where it gets a little bit murky, and this is where I'm not sure if I understand the argument made here on the motion to dismiss. Let me just foreshadow. If there was a point in which the CIT treated an argument that you and only you were making as an argument it could address, in the case to which you were not a formal party, it seems to me you were effectively made a party. Is that the situation here or not? Yes, Your Honor. Okay. That's the simple answer. Turning back to, I wanted to address this to Your Honor's question as well, if you would indulge me. The Commerce Department had an issue before as to what to do with the wood input value, and there were four surrogate value sources. It considered all four together in its final determination, and the issue of volume-based versus weight-based was the issue that the cross-appellants here raised below. But EWOT had raised the issue of, well, if you're going to move off of the preferred data source that Commerce had selected, there are these other data sources that Commerce must balance against the flawed data that the court wants Commerce to use. And this goes back to the overarching point of our appeal. Our appeal is all about the fact that the trial court stepped into Commerce's shoes and became the finder of fact. Indeed, the trial court weighed the evidence and then looked at what Commerce did and said, well, the weight that you attach to that is not the same weight that I would attach to it. And I submit that that's improper for the trade court to do in a Commerce determination. It's true, just to go back, one last question on standing. You had referred to the Sandwiches case as being more closely aligned than the Johnson case. But in Sandwiches, there were multiple parties to the appeal, at least one of which had standing. Is that right? That's correct. Here, the only party is Ewha, and Ewha was not a party to the case in which this issue was raised. Well, we would submit that Ewha was made a party for the purposes of Judge Tarraza's question, but we would also submit that Sandwiches merely said that we do not have to look into the standing issue. It actually somewhat bypassed the issue. But notably, Sandwiches did say, we don't have to do that because the facts below were such that they were so intertwined and the case was treated as intertwined, and therefore, parties could appeal there. But you could see the distinction where at least one party had standing to raise the issue. It is true, Your Honor. I do not disagree, and there are other cases where that exact same fact pattern applies. However, there are trade court cases on this issue that date back to the 1980s when, in Silver Reed in particular, there's a passage there where the court has said, in order to have jurisdiction here before me, you have to either take your own appeal or alternatively wait and intervene in somebody else's actions to preserve your rights. Here, Ewha took its own appeal, and it became a consolidated appeal with all the other parties who appealed below. And there was a consolidated judgment, and that consolidated judgment affected Ewha for all purposes, including the first issue of volume versus weight-based surrogate values, in addition to the issue about the alternative data sources on the record. Can I inquire a bit about where we are to give deference in this instance? We're reviewing the record of the Commerce Department de novo. We have commerce having twice made a finding that the WTA standards, the weight-based standards, are more accurate, more reliable. And then once, somewhat under pressure from the court, they've come back to a volume-based standard, the NSO data. Where do we owe deference? Well, Your Honor, this court, as you rightly put, reviews commerce's determination, well, reviews these determinations on appeal de novo. So you apply the same standard as the trade court. Within the first, you can go to commerce's final results and query whether they are supported by substantial evidence. That's the standard here, whether a reasonable mind might accept as adequate the reasons that commerce addressed to support its conclusion. Yeah, but twice they told us that the reliable data was weight-based. Once they told us it was volume-based. Which is it? Well, it could be the first two cases from my point of view, Your Honor. How do we have any confidence in either version that commerce is giving us? Well, Your Honor, all you are required to do is to look and see whether commerce addressed all the arguments that were made, which it did, and provided— I'm not sure you're quite understanding the question. Tell me if I'm right in understanding procedurally how this happened. Commerce twice said, we exercise our discretion and our judgment to choose the weight-based. CIT said twice, no. And finally it said, do the volume-based or expand the record. And at that point, do I understand right, commerce said, okay, we'll do it, but we don't think it's right. We're doing it under compulsion. And you're now appealing, I gather you think you have the right, even though commerce has simply acquiesced but not embraced the order to challenge it, on the ground that there's really only one exercise of discretion here. It was always in the weight. It never made its own judgment that the volume was actually better. Had it done that, the earlier judgments would have been wiped out. Yes, Your Honor. I think that that is a very good synopsis here. Can I add one little thing? Better stated than me by a long ways. Can I add one little point to it? There's a deference owed to the expertise of the agency. Where does that belong in this scenario that Judge Toronto just gave us? Well, Your Honor, each of the determinations, the final results as published that were then appealed, and then the first remand redetermination, those are both reasoned determinations by the Department of Commerce. It was only until the Court of International Trade issued a final judgment that we were able to appeal therefrom. And so commerce said, well, we can't do anything more than justify our reason for relying on the WTA data than what we've provided to you. So fine, we're going to do this under protest. And that's what they did in the second remand determination. They did it under protest. And, in fact, there's not much reasoning there when you compare the total weight of the reasoning that they provided for rejecting the NSO data in the final results and the first remand determination. Why don't we save your rebuttal time, Mr. Pillai? Thank you, Chief Judge Brader. I hope that answers your question. Well, I think we'll get to inquire further here in a moment. Mr. Taylor? Yes, Your Honor. Thank you. And, Your Honor, for timing purposes, the parties have agreed 10-10-10. I do understand that. Can you give Mr. Taylor 10 minutes? I just want to make sure we're all on the same page. Well, you've kind of rewritten the pages here. I'm sorry, Your Honor. That's okay. In your case, it's a unique procedural posture, as I believe we all appreciate. It may please the Court. My name is Michael Taylor. I'm representing the American Furniture Manufacturing Committee in Bonn-Bassette. And before the Court can actually look at the merits of the weight versus volume issue. Well, deal with the question I was just dealing with with Mr. Pillai. Absolutely. We are now sitting in the same place as the Court of International Trade. We're being told actually three times, as Judge Toronto points out more accurately than I, that commerce, in its wisdom, with its battery of economists and its investigators, thinks that the weight-based system is the best, the WTA data. Where are we empowered to do something different than that? The answer is in the statute. It's the best available information. And they're telling us the best available information is the WTA data. And respectfully, I would disagree with that. If we walk through the history of this. But the point is we really should be giving that decision some credibility, weight of expertise, and deference, right? If they follow the best information available standard and if the determination is reasonable. If they did. And if you have an argument. But at this point, the burden is somewhat on you to overcome their decision that this is the best available information. Well, and I would procedurally just understand. The Commerce Department originally relied on volume data. This is the first instance where volume data was presented because we changed our countries. So in the preliminary finding, it was volume data. They switched based on in the final result. They made a decision that it wasn't the best. But in actuality, the decision to use the weight data was on information's inclusion and rebuttal brief for the first time. And no party is appealing the remand from that first decision. Everybody here acknowledges that first determination, the final determination was wrong. The analysis and the information they relied on. There was no support for best available information. So, and that issue is not before the court. That's not being appealed by the, it's not being raised in their claim. The issue then becomes on remand. Did they evaluate? Did they do a determination of what is the best available information? Wood and bedroom furniture, the most important factor is wood. Wood is sold and recorded on a volume basis. E.Y. bought its wood on a volume basis. It's traded on a volume basis. The Philippine HTS schedule records officially that the quantity unit is cubic decimeters. So. I was confused about something. In one of the very lengthy documents, maybe it's, I forget what the acronym is, the one. ESO. No, the classification system. Yes. A number of the kinds of wood are, it gives units in kilograms. And a lot of them it gives units in cubic decimeters. Correct. And there's different types of wood. There's veneer, which is not what we're talking about. So it's a very thin layer. Is there some rhyme or reason to how that classification chooses which units to measure in? Well, yes, your honor. And the way that wood is recorded and sold and the way that it's traded are in the different types. Just like if you bought the harmonized tariff schedule as a whole would take account of, you know, is oil trade in barrels? You report barrels in the harmonized tariff schedule. Veneer is traded based on weight. So you report weight. Veneer, lumber is traded based on a volume basis. So volume is relevant. Price drives volume. Our volume drives price. And so understanding that bigger context, Commerce came in and said, well, on remand we messed up in the first instance, but we're going back and we're being told look and determine whether or not weight or volume is the best available information for us. And they acknowledge in that remand determination volume is reliable. Volume is a reasonable basis. However, they chose weight because they said there was a correlation between the weight and the price, but there wasn't. That doesn't seem to me, at least as I remember, quite a fair characterization of what they said. I'll tell you what I remember and then you can correct me. I thought what they said is there are potential difficulties with the translation with a uniform conversion factor of the weight amounts into volume amounts, potential because some of the wood could be green. But we have no idea how much. So we can't determine whether that's a small or a large problem. We look at the volume data, the so-called NSO data. Never mind the volume data. We see some problems with that. So we have two sets of data, potential problems on one, potential problems on the other. Our best judgment is that the weight data is better, all things considered, than the also flawed volume data. Now, what's wrong with that? Well, the presumption that the volume data itself was flawed I think was not what Commerce found. Commerce found and recognized when they understood and looked at what the NSO data, actually the correspondence from the NSO, the custom service, the statistics service itself, that whenever there was a gap, it was sometimes but only very seldom. And so in understanding that, Commerce said, while we could use this in the first remand, while we could use this, we're going to use the weight data. However, the weight data, in order to have and to demonstrate and evaluate best, you have to do a, you have to compare. And to use weight in this context is wholly unreasonable unless you can find a correlation. The concern I have here, Mr. Taylor, is you're arguing the facts all over to us. Aren't we bound to recognize that Commerce has highly skilled people who spend their whole life evaluating wood and cases like this one? Why would we tell them when they twice, perhaps three times, depending upon how you look at it, tell us that weight's the right way, why would we go back a different direction? Well, I appreciate the question. I think you're asking the right question, Your Honor. And the fact that, did they evaluate the evidence? Is there subject matter jurisdiction? I'm sorry, is there substantial evidence on the record to support the determination? I appreciate it, Your Honor. Excuse me. And the answer is no, because weight data, to demonstrate that weight data is reliable and is a reasonable choice, they have to demonstrate there is a correlation between picking, whenever weight increases, the price increases in a relation that makes sense. So, if the weight doubles, the price doubles. But, in fact, weight is affected, I mean, use the valuation calculations, weight has three, at least three principal factors that can adjust and don't tie to price. Volume doesn't have that situation. So, if you have two imperfect choices, you have to evaluate and you have to decide which is the best information. The weight data can be affected if there's moisture content. Commerce acknowledged that there was at least some water in wood that was being used in the data set. Remember, UL was using only kiln-dried lumber. Species data, they said that there... Right, and if I remember right, Commerce said, while we think that there's a possibility of some, we don't know if some is trivial epsilon or is large. No, I actually would, I don't read what they said that way. Remember, we have to take a step back and understand that kiln-dried lumber is lumber that has gone through a kiln. It's had all the water removed from it. And that's only what EWAS is using. So, in all of the lumber that's coming in for the import data, if you were to have a continuum, the kiln-dried lumber would be at the far end. And they recognized that they had an average density and they're able to look at the average densities and compare them with EWAS densities. They acknowledged there was some moisture content, but whether it's moisture content or it was density because of a species difference that does not have a price in our Figure 2 and our brief shows this, there's no one-to-one correlation between species. I'm trying to remember, but if I remember from that chart, what you said is, I think, right because you put in the word one-to-one. That is, it's not a perfect correlation, but in general, there is a correlation. No, I disagree with that. Their argument was there is a correlation. And they picked certain data points. What our Figure 2 does is it pulled all of the data that were on the record and you see that there's some very dense woods with high values, there's some very dense woods with low values. There's some less dense woods with high values and less dense woods with low values. So, instead of having a continuum where you have a line going up a slope, it moves all over the place. And that goes to the third point, is that weight data, these are gross weight factors. And so, the weight data, you have to account for the packaging. So, any time that you had kiln-dried lumber entering into the Philippines, for example, you'd have to package it up. But the volume-based data had this standard conversion factor that Commerce found very unreliable, very disturbing. In fact, overall, they said volume's worse than weight. Why am I going to go back on that? I don't think they said it was very unreliable, Your Honor. In fact, to the contrary, they recognized that they could not make that finding. They said, yes, the record only allows us to identify- They're concerned about the standard conversion factor, aren't they? It's going to cause them trouble. No, it did not cause them trouble, Your Honor, because they ultimately were able to- Why did they choose weight three times? Your Honor, they chose- Why did they choose weight three times? That's the amount of time. Are you okay if I- Yes, you can give me the answer and then sit down. Sure, Your Honor. Thank you very much. First time they chose weight, they were relying on data that they misunderstood, and that issue was not brought before us. The second- and that issue's not the one on appeal. The second time they relied on weight, they did so, and they said that they believe there's a correlation, and they didn't demonstrate a finding of a correlation. Commerce is just really dumb, is what you're trying to tell us. They're a lot dumber than you, and we ought to stick with you. Your Honor, what I am saying is that Commerce has to evaluate the best available- has to evaluate the information that's on the record and determine whether the information supports their determinations, which is what your standard of view is. Is there substantial evidence on the record to support their determination? And in this instance, knowing that you have volume data, which is how the lumber is traded and how it can be used, and they're using a weight data that they cannot show is not distorted. In fact, their record supports it and demonstrates, as a matter of fact, that it is distorted. Then they have to pick the best of the two alternatives. The sense I got, very briefly before you sit down, the sense I got was that what was troubling the trade court was that with the weight data, there was an aberration that was sort of in one direction only, caused by the fact that the wood that was being imported was kiln-dried, but the data included some green wood as well. How much was uncertain, but the distortion resulting from that was in one direction only. And whereas volume, there was a distortion and aberration as well, but it went all over, up and down, up and down. So I got the sense that the Court of International Trade was saying, it seems to me that the volume data, things would wash out, whereas weight would be a distortion in one direction only. And Commerce explained to me why that is not a problem, and they never got the explanation. Commerce has to demonstrate that under the best available information standard, that it acted and it made reasonable decisions, and the evidence supports its decisions. And they were unable to explain why there was not a distortion in using the weight data. And therefore, the court said, please explain, please explain, please explain. And having failed to do that, the court said, the evidence on the record is not sufficient. Please go back, reopen the record, and gather more information to support your correlation argument that weight is reliable, and if you can't, then we have to make a decision based on the evidence. Can I just follow up on that? It seems to me that Judge Lynn quite succinctly summarized what the CIT said in expressing the concern about the relationship between the wetness of the wood that might be distorting the weight calculation and the kind of mixed effect of certain possible problems in the volume consideration. But it seems to me, I don't understand how one can draw a bottom line conclusion from that without knowing the numbers. That is, qualitative movements. There might be variations in the problems that Judge Rustani identified as pointing both directions, but maybe they're this big, these variations, whereas the other ones that point in another direction, I guess maybe those are depending on, some of them are very small and some of them are very big so that they might not quite cancel out. Describing them qualitatively as pointing in two different directions doesn't say whether on net they outweigh what might be a tiny problem on the other side, on the weight side, which is just a point that it seems to me without numbers, there's no basis for saying commerce can't make the judgment that we don't know what to do with these possible factors. They're only qualitative. And I would respond by saying that on the volume side, in fact, there are numbers and we can show based on the evidence that's on the record, it's 1%, but even interpreting that and understanding the point that was made earlier, it's seldom, but very rarely, do we not have the actual volume data. On the weight data, turning the question around slightly and it goes straight to the point of why that was an unreasonable choice. Commerce never did the analysis to determine why there was a correlation, if there was a correlation, and the extent of the correlation, which is they have to demonstrate that the correlation for their, again, they're rejecting volume data and picking weight data when lumber is traded on a volume basis, all the pricing is on the volume basis, and on the weight basis, they have to show that if you double the weight, you're in fact doubling the price. Because if you're not doubling the price, you have a significant distortion. And what the court was saying is, if you're going to say there's a correlation, you have to demonstrate there's a correlation based on the record evidence, and you haven't done so. You've said there's a correlation, but you haven't demonstrated what the correlation is or what the impact of that correlation is, but it's crucial and it's unreasonable not to have that. Thank you. It makes it pretty hard for me to balance the time when I have three parties. I'm not sure whether to give you less or more, but we'll start giving you ten minutes and see how we can, at least we'll know that Mr. Beline gets a little more time. I'm here for as long as you want me here, Your Honor. Or as little? Please proceed, Mr. Tilley. Well, this case does have an unusual procedural posture in that we're only appearing as appellee with respect to one issue, which is the domestic industry's appeal with respect to the use of certain surrogate financial statements in the calculation of YIWA's dumping market. We haven't really talked about that much, but please. Commerce reasonably determined not to use the Diretso design financial statements in its calculation here. The statute directs Commerce to use the best available information in determining... Did it do so? Yes, it did. Did it do so on the weight and volume? Well, I'm not permitted to discuss that issue one way or the other. The government elected not to appeal. Then we're not going to need an awful lot from you, are we? This is, with respect to weight and volume, that was an adverse decision against the government and the government elected not to appeal, so I'm not authorized to either defend the judgment or oppose the judgment. All right. Thank you. But with respect to the best available information, really the key word there is available, and there were six other financial statements on the record for which there was no question as to whether the entity identified in the financial statements produced comparable merchandise. Here, on remand, the Department of Commerce went and supplemented the record, looked at the full website of Diretso, and also looked at information indicating that Diretso Trading was the company that owned the website, not Diretso Design, the company in the financial statements, and therefore the agency concluded, well, the financial statements are questionable as to whether the entity identified in those statements actually produced comparable merchandise, and because we have six other unquestionably good financial statements, we're going to talk about this particular statement, which may or may not be usable. For these reasons, we respectfully request that the Court approve. I fear I know the answer to this question, but are you also not permitted to address the standing question? No, we are permitted to address the standing question, which is a jurisdictional question, and we agree with the domestic industry here, with Mr. Taylor. We did not file a brief because the motion to dismiss addressed EWOT's appeal in which we had not appeared or filed a brief, but on further reflection, the Johnson case does control. But when a party here has been intimately involved all the way through, there isn't the slightest harm or prejudice to anyone because we all understand the issues that, as a matter of fact, nobody even sees this until the last day of briefing. Everyone had assumed we were going to carry on with this appeal. Isn't there a technical gotcha going on here rather than upholding of some sacrosanct principle? We agree that it's very technical, but jurisdiction is technical, especially when the suit is against the government under the backdrop of sovereign immunity. And in this case... Their complaint really isn't against the government, is it? Well, EWOT... You're not even adverse to them on this point. We're not adverse to them on this point, no. But we are... But when there's an issue about the jurisdiction just pursuing the government, we should answer questions regarding that issue. And I asked... Sorry, Mr. Bilene, a question trying to understand what at least at the moment feels like it might be important to me. Whether there was a point in the proceedings in the Court of International Trade at which the Court of International Trade was addressing an argument at that point made only by them in the case to which they were not formally a party. And I think he said yes, and that feels to me like, if it's true, might mean that they were effectively made a party. Call that intervention without an intervention order. But at that point, it becomes a non-jurisdictional, technical, procedural step that then produces jurisdiction. Well, I don't have a basis to contest the factual statement right now. But really, the way these kinds of cases work is that you might have five or six parties challenging a Department of Commerce determination, and all of them challenge different aspects of that determination. And the court will consolidate for convenience, sure. But certain parties intervene in other parties' cases as well to preserve the right to appeal. And in fact, just because the court allows everybody to comment on everyone else's issues... Well, I mean, I know that in these kinds of proceedings, parties try to do belt and suspenders because sometimes you can screw up and you just don't want to litigate about what we are now discussing. So you paper it over. The question is, when somebody neglects to paper it, what is the default rule, which we're now stuck with? So the question is not so much what everybody does as a routine matter because lawyers are cautious, but what happens when somebody neglects to do something. Well, waivers of sovereign immunity have to be construed in favor of the sovereign. All right, thank you, Mr. Cassini. Thank you. Mr. Belayon? Mr. Taylor, I see you on your feet. Your time is well expired. I understand. There was a factual question I was trying to ask. We don't need help with facts at the appellate stage. Thank you. Mr. Belayon? Yes, thank you, Chief Judge Rader. Judge Toronto, to your specific question as to when GWA was the only party raising an issue, I would direct the Court's attention to Joint Appendix 24 through Joint Appendix 28 whereby the Court of International Trade summarized GWA's arguments to the Commerce Department and addressed those arguments and those arguments had to do with the alternative data sources that were available here. And I think that that's how I construed your question earlier and that's what I was relying on for those facts. Were the arguments there with respect to weight versus volume? Your Honor, they were one and the same because the wood input issue was treated as one throughout the course of the proceeding. And so this was an alternative argument that came to bear only because the Court of International Trade substituted its judgment for that of Commerce. I do want, I know I'm short on time and I do not want to try the Court's patience. However, I do want to make a point about the fact that people report volume and that's, on this record there is a document, excuse me, I'm sorry, Your Honors, it's at JA6250 where the Philippine customs officials reported that parties are only required when they're importing wood into the Philippines to report weight and value. There's no such requirement imposed on volume. Instead, volume is a secondary characteristic and where volume is not provided for, the Philippine customs officials will use a standard conversion ratio, which the Chief Judge referred to earlier as the reason why Commerce doubted the veracity of the data source. And so I just wanted to clear that up. I also wanted to make... Mr. Bilainis, there was a very important discussion earlier with Judge Taranto about whether the reasoning of the Court of International Trade was linked to numbers sufficient to be able to tell whether volume or weight were clearly the best available data. I wish to hear your response to that as well. Well, I found the call quite interesting, Your Honor, because of the fact that I think that where we are now at the appellate level and where we should have been at the trade court level was did Commerce sufficiently justify its determination? And I'm not sure if the proof necessarily has to be there for Commerce to say, well, you know, this is an imperfect record. But between these two clearly imperfect data sources, on one level we have fact that indicates that there was a standard conversion ratio used. It may have been used a minimal amount, which is what the cross appellants argue, or it may have been used more, which is the masking argument that we make. The alternative is... It's like 46 out of 120-something. Right, Your Honor. And the other issue with that is that that's what you know for certain, that it was used. It could have been used more. And so the assumptions that are relied upon for why the weight-based data are improper, the idea that there might be some amount of green wood, heavy moisture wood, or heavier packing materials, that's an assumption that's not based on any fact. It's a basket category of wood, and we don't know specifically whether there's a large amount of green wood or whether it could easily just be the fact that all woods of different grades have different densities. And it could just be that. It could be that they're all dry woods, but some are more dense than others. And that was the judgment for Commerce to make. And they made the judgment below, and that's why we're here. And I do want to make one quick point, if you'll indulge me, and that is that when you appeal a Commerce determination, it's your burden to prove that their conclusions were unreasonable based on the facts below. And I think that the murkiness of this record, and as we've gone back and forth as to what the data show, indicates that this was one where Commerce, as the expert decision-maker, should have been left to its expertise. So with that, I will leave the floor. Thank you very much. Thank you, Mr. Belay. Our next case is in.